IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SUSAN B. O'DONNELL,

               Plaintiff,

v.                                    CIVIL ACTION NO. 3:05-0280

BIOLIFE PLASMA SERVICES, L.P.,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion to dismiss by Defendant Biolife Plasma Service, L.P. ("Biolife"). Upon consideration of the arguments by the parties, the Court **DENIES** Defendant's motion for the following reasons.

**I.**
**FACTS**

On March 11, 2005, Plaintiff Susan B. O'Donnell filed a Complaint against Biolife in the Circuit Court of Cabell County, West Virginia. In her Complaint, Plaintiff asserts that she began working for Biolife in December of 2001, and worked for the company until she was terminated effective May 14, 2003. *Complaint* at ¶ 3. Plaintiff claims that in March of 2003 she filed a claim for short term disability benefits, but the claim was denied, protested, and again denied. *Id*. at ¶ 4. Plaintiff contends that the disability plan provided that a claim for long term disability benefits could not be filed until 28 weeks had elapsed from the onset date of her disability. *Id*. at ¶ 5. Thus, Plaintiff asserts that, although she was eligible as a full-time employee to file a claim for long term disability benefits, her termination meant she was not eligible for the benefits. *Id*. at ¶¶ 5 and 10. Therefore, Plaintiff brought this action in State court for wrongful termination as a direct and

proximate result of her termination while suffering from a disability. *Id.* at ¶ 11. Thereafter, Biolife timely removed this action to this Court based upon preemption under the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and then moved to dismiss the action.

## II.
## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defending party may move to dismiss if the pleading party has failed to state a claim for which relief may be granted. A Rule 12(b)(6) motion tests the sufficiency of the pleading. It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering the motion, the claims must be viewed in the light most favorable to the non-moving party and all allegations accepted as true. *Id.* Dismissal is appropriate only when it appears beyond a doubt that no set of facts would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted. *See Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (reaffirmed in *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir. 1993). *See generally* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 1356 and 1357 (2004 and 2005 Supplement). It is under this standard that the Court must consider the arguments by the parties.

## III.
## DISCUSSION

In its motion to dismiss, Biolife asserts that Section 510 of ERISA, 29 U.S.C. § 1140, applies to this case. In her Response, Plaintiff does not dispute that her claim is preempted or that Section 510 applies. This section provides, in part:

> It shall be unlawful for any person to discharge . . . a participant . . . for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . . The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140, in part. Under this section, a plaintiff "must prove a specific intent of the employer to interfere with . . . [his or her benefit] rights." *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991). As employers seldom, if ever, memorialize specific intent, the Fourth Circuit has held that a plaintiff can utilize the *McDonnell Douglas* framework of proof. *Id*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

Under this framework, Biolife asserts that Plaintiff must prove: "(1) that [s]he is a member of the protected class, *i.e.*, a participant in an employee benefit plan; (2) that [s]he was qualified for the job; and (3) that [s]he was discharged 'under circumstances that give rise to an inference of discrimination." *Blair v. Young Phillips Corp.*, 235 F. Supp.2d 465, 473 (M.D. N.C. 2002). Biolife does not deny that Plaintiff can meet the first prong of this test because she was a participant in the employee benefit plan. However, Biolife insists that Plaintiff cannot meet the final two prongs of the test. First, Biolife claims that Plaintiff cannot show she was qualified for the job because her underlying claim is that she was disabled and unable to perform her work. Second, Biolife argues that she is unable to satisfy the third prong because her claim that her termination prevented her from pursuing long term disability benefits is factually inaccurate. Specifically, Biolife points to the policy which provides that "[t]ermination will not affect a covered loss which

began before the date of termination." *CNA Group Life Assurance Company Policy*, at 12. Therefore, as Plaintiff cannot meet either the second or third prong of her prima facie case, Biolife argues her action must be dismissed.

On the other hand, Plaintiff argues that her claim should not be dismissed because she can establish a prima facie case under the *McDonnell Douglas/Burdine* burden shifting framework for retaliatory discharge. *Response to Motion to Dismiss*, at 2. Under that standard, Plaintiff must show "(1) that she engaged in protected activity; (2) that the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action." *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991) (footnote omitted). Utilizing this standard, Plaintiff argues that she has established a prima facie case because she was attempting to exercise her rights under the ERISA plan, she was terminated, and such termination created a causal connection between the exercise of her rights and the adverse action.

In support of its position, Biolife cites *Henson v. Liggett Group, Inc*., 61 F.3d 270, 277-78 (4th Cir. 1995), *Conkwright*, and *Blair*. However, both *Henson and Conkwright* involved age discrimination claims and *Blair* involved an employee who was working and claimed he was fired to prevent him from obtaining future benefits. None of these cases involved an employee who claims that she was terminated to prevent her from acquiring *disability* benefits. This distinction is important because a claim for disability benefits is, by its very nature, a claim by an individual who asserts an inability to work. Thus, an individual claiming a disability could never state a prima facie case under the standard proposed by Biolife because such individual could never meet the second

prong of the test, that is, the individual is qualified for the job. Therefore, unless in the highly unlikely situation in which an employer memorialized its specific intent, an employee who is terminated to prevent the employee from obtaining disability benefits could never enforce his or her statutory rights, despite the fact that such activity clearly is prohibited under Section 510. Accordingly, the Court declines to apply this standard in disability cases because it would virtually eviscerate the rights of such individuals under Section 510.

To the contrary, the Court finds the retaliatory discharge standard more appropriate. Under that standard, enforcement of Section 510 rights is possible for individuals claiming that they were terminated to prevent them from obtaining disability benefits. Indeed, other courts have applied this standard for claims of retaliation under Section 510. *See Kinkead v. Southwestern Bell Tel. Co.*, 49 F.3d 454 (8th Cir. 1995) (applying the retaliation standard on a motion for summary judgment for a plaintiff's Section 510 claim that she was fired to prevent her from obtaining disability benefits); *see also Pickett v. Bamsi, Inc.*, No. C-93-20478-RMW-EAI, 1995 WL 73100 (N.D. Cal. Feb. 13, 1995) (utilizing the retaliation standard for a Section 510 claim in which the employee asserts he was fired in retaliation for his conduct with respect to a pension plan). However, even though the Court finds this is the appropriate standard in retaliation claims, the Court's analysis in this case cannot stop there.

As previously mentioned, Biolife also argues that, in any event, Plaintiff cannot maintain her action because she was not prohibited from filing for long term disability benefits under the language of the policy. Plaintiff states in her Response that her "termination did have an effect

on the length of time of her entitlement to coverage for a disability which began prior to the time she ceased to be covered by the LTD plan and the term of that disability is a factual dispute not subject to a motion to dismiss." *Response to Motion to Dismiss*, at 2. Clearly, under the terms of the policy, Plaintiff's argument that her termination affected her ability to apply for long term disability benefits is simply wrong. Defendant does not dispute that the onset date of Plaintiff's alleged disability was before she was terminated. Thus, despite her termination, Plaintiff had the right to pursue long term disability benefits following the 28 week waiting period. However, the Court recognizes that whether or not Plaintiff could pursue long term disability under the plan does not answer the question of whether the person or persons who made the decision to terminate Plaintiff had the *purpose* of interfering with her ability to obtain long term disability under Section 510. As discovery has not been conducted in this matter, it is conceivable that the person or persons who terminated Plaintiff were unaware of the policy language and fired her because they thought that she would be unable to apply for long term disability benefits. Concededly, this possibility may be very difficult for Plaintiff to prove. Nevertheless, the Court finds under a motion to dismiss standard that Plaintiff should have the opportunity to conduct discovery on this issue.

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss and will permit this case to proceed to discovery. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: August 30, 2005

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE